Ann E. McDougald, Adm'x, &c. vs. William Dougherty.

No. 84.—ANN E. McDOUGALD, administratrix, &c. plaintiff in error, vs. WILLIAM DOUGHERTY, defendant in error.

[1.] A tender cannot be made by one who is not a party to a bill in Equity, so as to constitute a valid objection to the reception of a material amendment.

[2.] A cross-bill is a bill brought by a defendant against a complainant or other parties in a former bill depending, touching the matters in question in that bill. And the bill should be so framed, that both causes may be heard together, and one decree cover both.

[3.] Where no decree is prayed against a new party to a bill, brought in by amendment, it is not requisite to extend to such party, the time allowed to an original defendant, for the purpose of filing answer. And it is competent for the Court to prescribe the time in which an original defendant shall answer an amendment.

[4.] A Court of Equity, as a general rule, is liberal in allowing amendments adding parties to a creditor's bill; and such creditors may be made parties, even at the hearing.

[5.] A Statute must be construed with reference to the whole system of which it forms a part.

[6.] That portion of our Judiciary Act of 1799, which declares that in Equity causes, the Courts "shall order the proceedings in such manner as that the same shall be ready for trial, at farthest, at the third term from filing the bill, inclusive, unless very special cause be shown, to induce the Court to continue the same, which shall not extend to more than four terms", must be construed to mean, that the term within which the cause is to be tried, is to be computed from that term of the Court in which the bill is filed, after which service had been perfected on all necessary parties thereto.

[7.] *Semble*, that in England, previous to May, 1776, the doctrine prevailed, that a surety who paid a debt for his principal, might be subrogated to the rights of the creditor, in a Court of Equity; and such Court would compel the creditor to assign the debt to the surety. If so, this rule was, of course, adopted as the law of Georgia. But whether so or not, in the light of our legislation on this subject, a Court of Equity may, upon a proper case made, direct such assignment.

In Equity, in Muscogee Superior Court. Decisions by Judge IVERSON, November Term, 1852.

In March, 1851, William Dougherty filed a bill in Equity, for himself, and in behalf of all other creditors of Daniel McDougald, who might choose to come in and be made parties,

setting forth that McDougald, in his life-time, made an assignment for the benefit of his creditors, of a large amount of property, constituting therein Robert B. Alexander and Seaborn Jones, the trustees for the execution of the trusts declared in the assignment. That the trustees had failed, utterly, to execute the same, but had permitted portions of the property to go into the hands of Duncan McDougald, Alexander McDougald and Mrs. Ann E. McDougald, and praying the appointment of a receiver, and a decree executing the assignment. At May Term, 1852, leave was granted the complainant to amend his bill, by adding new parties, complainants and defendants; which amendment was filed on 7th June, 1852, but was not verified. On writ of error, sued out to the Supreme Court, this order of the Court was reversed, on the ground that all amendments to sworn bills must be made under oath. At November Term, 1853, on motion of complainant, it was ordered that leave be granted to the parties complainant, to take off the file the amendment filed June 7th, 1852; and it was farther ordered, (the same being then verified,) that the original bill be amended, by the allowance of the amendment filed under oath, and that a copy of the amendment and order be served on the parties within sixty days after the adjournment of the Court; and that Ann E. McDougald, administratrix of Daniel McDougald, whom this amendment proposed to make a party, *as administratrix*, be served with a copy of the original bill and the amendment, within the time aforesaid; and that all of the defendants plead, answer or demur—not demurring, alone, to said bill, as amended, on or before the first day of the next term of this Court.

Defendants' counsel objected to the allowance of this order, because Ann E. McDougald, as administratrix as aforesaid, had, at that term, brought into Court and tendered to complainant, William Dougherty, payment, in full, of his demand against Daniel McDougald, which money was now deposited, by the order of the Court, in the hands of the Clerk, ready to be delivered to complainant, whenever he would accept the same; and that the said administratrix had filed her cross-bill, setting

forth additional and farther reasons why the complainant should be compelled to accept the amount tendered.

The Court overruled the objections and defendants excepted.

Defendants moved to dismiss the bill, four terms having passed since it was filed, because of the failure of the party to speed the cause. The Court refused the motion, and defendants excepted. Upon these exceptions error has been assigned.

This cause, in the Supreme Court, was heard, together with a writ of error sued out upon a decision on demurrer to the cross-bill filed by Mrs. McDougald and referred to above.

That bill charged the following facts:

Ephraim C. Bandy, on 5th May, 1839, made his promissory note for $2200, which was indorsed by John L. Lewis and Daniel McDougald, and discounted for the benefit of the maker, by the Bank of Milledgeville. That Bank, afterwards, sued and obtained judgment against each of the indorsers, Lewis and McDougald. On 1st February, 1851, the Bank transferred the execution against McDougald, for the balance due thereon, to William Dougherty. About the 3d of March, 1851, Dougherty filed the bill above referred to, for himself and in behalf of all the creditors of Daniel McDougald, who might choose to come in and take the benefit of the decree, setting forth that an assignment, for the benefit of his creditors, had been made by McDougald, conveying, for that purpose, a large amount of property, alleging a failure on the part of the trustees under the assignment, to execute the trust, and praying the appointment of a receiver and the execution of the trust. Mrs. Ann E. McDougald, the widow of Daniel McDougald was made a party to this bill, as having received some portion of the property, and filed her answer thereto.

The cross-bill alleged, farther, that on the 27th of November, 1852, she, by her counsel, and as the administratrix of Daniel McDougald, deceased, had tendered to the said William Dougherty the whole amount due on the said *fi. fa.*; that from that time to the time of filing the bill, she had at all times been ready to pay the same and, by her bill, again tendered the

same, and deposited the amount with the Clerk, subject to the order of the Court. The bill farther charged, that John L. Lewis, who had long been considered insolvent, the complainant was informed, a few days before the filing of the bill, had lately, (in the State of Louisiana, to which he had removed,) become perfectly solvent, so that, could she now become possessed of the control of the judgment against Lewis, the prior indorser, she believes she could secure the whole amount of the debt; and thus relieve the estate of her intestate from this incumbrance.

The prayer of the bill was, that William Dougherty, the holder of the *fi. fa. vs.* Daniel McDougald, be compelled, by decree of the Court, to receive the amount due on his judgment, so tendered by complainant, and assign the same to complainant.

On demurrer, for want of equity, the Court dismissed this bill.

This decision is assigned as error.

JONES & JONES, for plaintiff in error.

DOUGHERTY, for defendant in error.

Judge BENNING having been of counsel, did not preside in this case.

*By the Court.*—STARNES, J. delivering the opinion.

It is objected, that the Court below erred in admitting the amendment in this case. 1. Because Mrs. McDougald, as administratrix, had tendered the amount due to the complainant, both by personally depositing the same with the Clerk, and by her cross-bill, which had been filed, and that there is no occasion, therefore, to amend the bill for the relief of the complainant. 2. Because that the order directed the defendants to answer at the next term. 3. That the amendment was

made at too late a period of the proceedings, and unnecessarily delayed the cause.

[1.] After careful examination, we are satisfied that a tender cannot be made in a cause like that before us, by one who is not a party to the case, so as to constitute a valid objection to the reception of a material amendment.

We see no reason to change the view expressed on this subject, when this case was formerly before the Court, upon another point. It was then said, " had it (the tender) been made by Mr. Jones, the assignee, or by Mrs. McDougald, as the administratrix of her deceased husband, who owed the debt, and whose estate is liable to pay it, after she had been made a party defendant to the bill, I should feel constrained, upon principle, to accept it", &c. And, in another place it was remarked, in such a case, " *the defendant* may tender satisfaction, and compel him (the complainant) to accept it". *McDougald vs. Dougherty.* (11 *Ga.* 570, 588.) Here the decision was, not that it was sufficient for the tender to be made by Mrs. McDougald, in her character of administratrix, but *as party to the suit.* Until this amendment was received, of course Mrs. McDougald, as administratrix of her husband, had not been made a party defendant.

The propriety of a rule which confirms this right of tender, as a bar to the action, to a party defendant, is too obvious to need comment.

[2.] As if recognizing the rule, and endeavoring to meet the exigency of its terms, it has been urged that a cross-bill has been filed by Mrs. McDougald—that she thus becomes a party to this proceeding ; and in this character, as well as administratrix, now makes the tender.

This would obviate the difficulty, if Mrs. McDougald, by filing the bill, which is denominated a cross-bill, had really become a party to this proceeding. But, it is our opinion that the bill in question is no cross-bill. A similar reason to that which prevents our considering this tender as having the effect insisted on, operates to determine that this is no cross-bill.

In the very elementary nature of the thing, a cross-bill is a bill filed by a *party defendant* to a suit. It "is a bill brought by a defendant, against a plaintiff or other parties, in a former bill depending, touching the matters in question in that bill". (*Milf. Pl.* 80, 81. *Lube Pl.* 103. 1 *Smith's Ch. Pr.* 459. *Story's Eq. Pl.* 311. *Cooper's Eq.* 85.)

This is no barren technical distinction, but it is founded on reason and good sense.

One of the requirements of pleading in Chancery, is, that a cross-bill shall be so framed that both causes may be heard together, and one decree cover both; and a bill which does not pray this, lacks one of the prominent features of a cross-bill. *Wright vs. Taylor*, (1 *Edw. V. C.* 226. 1 *Mitf.* 83.) Now, when this rule is considered, it is evident that if strangers to the proceeding were allowed to come in at various stages thereof, and engraft new bills and new matter thereon, it will be very difficult to tell over what indefinite expanse a cause in Chancery would extend itself; where would be its metes and bounds; and when its litigation would terminate.

Mrs. McDougald, therefore, not being a party to this action, as administratrix, when the tender was made by her in this character, it could not operate to prevent the reception of this amendment.

It was admitted, in the argument, that since the filing of what is called the cross-bill, and the deposit of the amount tendered, the complainant had personally taken possession of the same. This fact cannot, of course, alter the view we take, as that is to be controlled only by the rights of the parties, as they existed at the time when the issues were formed, and the decision made in the Court below.

[3.] The next objection is, that defendants should not have been required, by the order allowing this amendment, to answer at the next term after it was filed. This objection does not apply to Mrs. McDougald, though she was made a party, as the administratrix of Daniel McDougald, for the first time by the amendment. No decree is prayed by that amendment,

as to her; and, in such case, the rule invoked does not apply. As to the other defendants, inasmuch as they were previously parties to the bill, it was competent for the Court to prescribe the time in which they should be required to answer, due regard being had to the privilege of demurring and pleading before answering. *Leonard vs. Stocks,* (12 *Ga.* 552.)

[4.] That the amendment had not been previously made, was no good reason why it should not have been made, at the time it was tendered. A Court of Equity, as a general rule, is liberal and indulgent in allowing amendments adding parties to a creditor's bill. It is known that such creditors may be made parties, even at the hearing. *Hichens vs. Congreve,* (4 *Peass.* 572.) *Milligan vs. Mitchell,* (1 *Myl. & C.* 433.)

It was remarked, in the argument, that in the course pursued, there has been, on the part of complainant, a pertinacious and vexatious prosecution of this proceeding against Mrs. McDougald, and that great hardship has resulted. We do not find this in the record.

Experienced counsel should be aware, that this Court must not allow itself to know anything of the parties, except what the record presents. That it should not be influenced by their feelings or their passions, save as they constitute features in the record of the case; and that all its efforts to administer justice, calmly and accurately, between the parties litigant before it, must be wholly vain, unless it confines itself to these prudential limits.

[5.] Error is also assigned, on the ground that the Court refused to dismiss the bill, on account of "failure to prosecute with due and proper diligence and speed".

It is insisted that the proceedings in the cause had not been ordered in such a manner, that the same might have been ready for trial at the third term from the filing of the bill, or the fourth term, at farthest.

In support of this position, it is urged that this is a statutory requirement; and as such, is positive and compulsory, and must be obeyed.

The statutory rule referred to exists.   But it must be construed with reference to other principles of existing law.   That is to say, it must be construed consistently with the whole system of pleading and practice, of which it forms a part.   This is one of the simple and sensible rules for the construction of all Statutes.   (*Bacon, Abr. Lit. Stat.* 1, 3.   *Dwarr. on Stat.* 699, 700.   *Lord Mansfield in Rex vs. Loxdale et al.* 1 *Burr. R.* 447.)

[6.] By such system of pleading and practice, of force in the Courts of Equity in this State, amendments, adding new parties, are allowed, (in some cases required,) in the discretion of the Chancellor, at various stages of a cause, and by the same system the time provided, according to our Equity Rules, in which defendants may demur, plead and answer, is allowed these new parties, if a decree is prayed against them.   This is plainly right and necessary to justice.   But if the letter of the Statute, as to the time in which the case is to be ordered for trial, is to prevail, these two provisions cannot stand together. To give effect to each, therefore, it is necessary to hold, that the time within which the cause is to be tried, must be computed from that term of the Court in which the bill was filed, after service has been perfected on all necessary parties thereto.

But for a more full discussion of this subject, see *Hoxey vs.* (*Carey* 12 *Geo. R.* 541.)   *Leonard vs. Stocks* (*Ibid* 551. 552.) *McDougald vs. Carey* (*Ibid* 563.)

On these grounds the judgment is affirmed.

[7.] Though the bill filed by Mrs. McDougald against William Dougherty, cannot be regarded as a cross-bill, and though that portion of the bill which seeks cross relief, and asks that the proceedings in the original bill may be stayed, and a decree be framed which shall cover both bills, cannot be sustained, yet, in the opinion of this Court, there is such equity in the bill as calls for an answer.

If that which is alleged in relation to Mr. Dougherty's claim, (derived by assignment in the Bank of Milledgeville,) be true—if it be true th t Daniel McDougald was not interested in the consideration upon which this debt was founded, and

was only surety thereon—if it be also true that if this judgment be now assigned to his administratrix, she can, in all probability, secure payment of the same from John L. Lewis, the principal, while he is solvent, and able to pay the same ; and if, as her bill in effect alleges, Mr. Dougherty is unwilling to accept payment of the debt, and make assignment of the judgment to her, but insists on continuing to use this claim in aid of the creditor's bill which he has filed, we think a Court of Equity may properly interfere to grant the relief which is sought, and compel Mr. Dougherty to accept payment, and make this assignment.

We are aware, that it may be considered as now settled in England, that a surety, upon payment of the debt, is not entitled to require the creditor to assign the same to him, for the purpose of enabling him to re-imburse himself out of the principal. The case of *Copis vs. Middleton* (1 *Turn. & Russ.* 224) seems to be the leading and controlling case to this effect. But this is comparatively modern doctrine. The Law was otherwise ruled in England previous to the 14th day of May, 1776. The more equitable rule of the Civil Law, on the subject of *substitution* (1 *Domat. B.*, 3 *Tit.* 1, § 6, *art.* 1) seems then to have been adopted. (*Ex parte Crispe*, 1 *Atk.* 135. *Parsons vs. Briddock*, 2 *Vern.* 608. And see 1 *Story Eq.* and cases there cited.)

This being the Law at the period designated, may be said to be that which was adopted by our legislation, and is now of force in Georgia.

Chan. Kent seems to have recognized it as the correct rule in *Cheeseborough vs. Miller* (1 *John. Chan.* 413.)

But if this principle were not the Law in England in May, 1776, and hence, not adopted by our Statute of 1784, still, we think, it has been made the Law for us by subsequent legislation. By our Statutes, and especially by the Statute of 1831, we have practically adopted the doctrine of the Roman law to which I have referred, and which Judge Story tells us is " a far more liberal and comprehensive doctrine" than that which

is now held in England, and in some of the United States. (1 *Story Eq.* §500.)

This latter view of the subject, rests upon the idea that the debt is extinguished by the surety's payment, and the creditor has nothing to assign. (1 *Story Eq.* §499. *Copis vs. Middleton*, 1 *Turn. & Russ.* 224.) But our Statute provides that a surety paying off a judgment, by satisfying a Court of Common Law that he was not interested in the consideration of the debt, shall have an order, giving him control of the *fi. fa.*— Such legislation, of course, negatives the idea that the debt is extinguished by the surety's payment, and there is nothing for the creditor to assign. This difficulty being removed, there is no obstacle in the way of the creditor's assignment *cessante ratione cessat ipsa lex.*

With great propriety, then, a Court of Equity, in our State, when a case is made like that which this bill presents, may adopt this doctrine and compel the creditor, upon payment of his debt, by a surety, to assign the judgment to him.

The judgment dismissing this bill, is therefore reversed